IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
No. 5:25-cv-00078-SCR-UMJ

| | |
|---|---|
| THE VILLAGE ON THE GREEN CONDOMINIUM OWNERS' ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>NATIONWIDE MUTUAL INSURANCE COMPANY,<br><br>Defendant. | **DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7.1, Defendant Nationwide Mutual Insurance Company (hereinafter "Nationwide") hereby submits this Brief in Support of its Motion for Summary Judgment submitted contemporaneously herewith.

## STATEMENT OF THE CASE

Plaintiff filed this civil action in Superior Court of Watauga County, North Carolina on April 14, 2025, alleging breach of contract, bad faith, and unfair and deceptive trade practices against Nationwide for the handling of Plaintiff's insurance claim involving alleged hail damage that allegedly occurred to eleven (11) roofs of Plaintiff's buildings on May 1, 2022. Plaintiff opened its claim with Nationwide on August 30, 2022. Plaintiff filed this action, almost three years after the damage allegedly occurred, because, despite having no expert testimony or reports that any hail damage occurred on May 1, 2022, it believes that Nationwide should pay to completely replace all eleven (11) roofs located at its property.

Nationwide now moves for summary judgment because Plaintiff's claims fail as a matter of law.

## STATEMENT OF THE FACTS

Nationwide hereby adopts, and incorporates by reference, its Statement of Material Facts, which is being filed contemporaneously herewith.

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). That is, the moving party must show the absence of a "dispute[] over [a] fact[] that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." *Id*. at 255; *see United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion."). Nevertheless, "[p]ermissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." *Lovelace v. Sherwin-Williams Co*., 681 F.2d 230, 241 (4th Cir. 1982) (quoting *Ford Motor Co. v. McDavid*, 259 F.2d 261, 266 (4th Cir. 1958)).

Once the moving party has met its burden, the non-moving party must then "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. *See Anderson*, 477 U.S. at 247-48 (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). The nonmoving party must do more than present a "scintilla of evidence" in its favor. *Id*. at 252. Rather, the non-moving party must present "sufficient evidence" such that reasonable jurors could find for him. *Id*. at 249. A court may grant summary judgment if the nonmoving party's evidence is "merely colorable" or "not significantly probative." *Id*. at 249-50. Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." *Myrick v. Prime Ins. Syndicate, Inc*., 395 F.3d 485, 489 (4th Cir. 2005).

## ARGUMENT

### I. PLAINTIFF FAILED TO PROVIDE OR FORECAST EVIDENCE TO SHOW DAMAGES, AS REQUIRED UNDER A BREACH OF CONTRACT CLAIM.

Plaintiff provides no evidence demonstrating that any if its alleged damage were caused by a hailstorm on May 1, 2022. To succeed on a claim for breach of contract, a plaintiff must show (1) the existence of a contract between plaintiff and defendant; (2) the specific provision that was breached; (3) the facts constituting the breach; and (4) damages. *See Johnson v. Cricket Council USA, Inc*., 658 F. Supp. 3d 276, 282 (E.D.N.C. 2023) (citing *RGK, Inc. v. U.S. Fid. & Guar. Co*., 292 N.C. 668, 675, 235 S.E.2d 234, 238 (1977)).

**A. Law on Damages**

To satisfy the fourth element, these damages must have resulted from the breach itself. *See id.*; *Dan King Plumbing Heating & Air Conditioning, LLC v. Harrison*, 281 N.C. App. 312, 332, 869 S.E.2d 34, 50 (N.C. App. 2022). Damages alleged by a plaintiff must be the damages that were "the natural and probable result of the acts complained of and must show loss with a reasonable certainty, and damages may not be based upon mere speculation or conjecture." *Pike v. Wachovia Bank & Trust Co.*, 161 S.E.2d 453, 466 (N.C. 1968); *see also Flatiron-Lane v. Case Atlantic Co.*, 121 F. Supp. 3d 515, 536 (M.D.N.C. 2015) (quoting the same).

Courts applying North Carolina law have consistently dismissed breach of contract claims where the plaintiff could not show that the damages stemmed from the breach itself. *See, e.g. Santana, Inc. v. Levi Strauss & Co.*, 674 F.2d 269, 275-76 (4th Cir. 1982) (denying claim for breach of contract when plaintiff benefitted from defendant's breach of contract); *Menzel v. Metrolina Anesthesia Associates, P.A.*, 66 N.C. App. 53, 60, 310 S.E.2d 400, 404 (1984) (affirming dismissal of defendant's breach of contract counterclaim when defendant "presented no evidence that it sustained damages as a result of plaintiff's breach").

Further, the party claiming damages must also prove those damages with reasonable certainty. *Matthew v. Davis*, 191 N.C. App. 545, 551, 664 S.E.2d 16, 20 (2008). While the reasonable certainty standard does not require absolute certainty, it "requires something more than 'hypothetical or speculative forecasts.'" *See id.* at 551 (quoting *McNamara v. Wilmington Mall Realty Corp.*, 121 N.C. App. 400, 407-08, 466 S.E.2d 324, 329 (1996)). The amount of damages is a question of fact, but "whether that amount has been proven with reasonable certainty is a question of law." *Plasma Ctrs. of Am., LLC v. Talecris Plasma Res., Inc.*, 222 N.C. App. 83, 91. 731 S.E.2d 837, 843 (2012). When a plaintiff does not sufficiently prove its damages, courts may

grant summary judgment to the defendant. *See Home Indem. Co. v. Hoechst Celanese Corp.*, 128 N.C. App. 189, 205, 494 S.E.2d 774, 784 (1998); *Lord of Shalford v. Shelley's Jewelry, Inc.*, 127 F. Supp. 2d 779, 789 (W.D.N.C. 2000).

**B. Plaintiff has Presented No Evidence of Damages Caused by a May 1, 2022, Weather Event**

Plaintiff has failed to submit any evidence of record by way of a roofing report, engineer report or expert report, that demonstrates there were any actual covered damages to the eleven (11) roofs at The Village caused by a May 1, 2022, hail event.

Plaintiff has submitted letters, reports and photographs which demonstrate that it believes it had hail damage to its eleven (11) roofs. [Ex. 9; *see also generally* Ex. 19]. However, none of these submissions demonstrate that any of these alleged damages occurred on May 1, 2022. As noted in the All-American Roofing letter, dated August 17, 2023, All-American Roofing noted that it "found significant signs of both hail and wind damage." [Ex. 9 at p. 1]. It goes on to discuss weather data pointing to the last major windstorm in the area occurring on April 1, 2023, and also points to a list of "64 reported weather events." [*Id.*] Notably, this list does not point to any wind or hail event occurring on May 1, 2022. [*Id* at pp. 5-6]. Further, this letter discusses a recent hail event occurring within the area of The Village on August 15, 2023. [*Id* at p. 1]. This letter never mentions any weather event causing damage to the roofs at The Village on May 1, 2022. Furthermore, the April 1, 2023, and the August 15, 2023, weather events fall outside the dates of the coverage for the Policy – July 25, 2021, through July 25, 2022. [D.E. 1-1 at p. 3].

Second, Plaintiff's witness states that it had another roofing company called Tabor Roofing (identified as Sewell Roofing by Plaintiff's witness – James Beam ("Mr. Beam")) get up on the roofs. [Ex. 1 at 56:25 – 57:8]. Mr. Beam stated that this company also said there was damage to

the roof. [*Id* at 56:25 – 57:8]. However, there is no report from Tabor Roofing indicating that any alleged damages it observed were caused by a May 1, 2022, hail event. [*Id* at 75:6 – 76:9].

Finally, Plaintiff's submission of the DWR Report in January of 2025, over 2 ½ years after the alleged date of loss and shortly after Hurricane Helene hit Western North Carolina, also does not opine that any alleged damage it observed was caused by a hail event on May 1, 2022. [Ex. 4 at 206:4-7; Ex. 10 at 88:15-18; *see also generally* Ex. 19]. In fact, the only weather data cited in the DWR Report indicates that the engineer searched the National Centers for Environmental Information (NCEI) Storm Event Database and it found that "[m]ultiple storms were reported in the area of the development [The Village]" from November 14, 2021, to July 31, 2024. [Ex. 19 at p 8]. Notably, at no time in the report does it mention any damages occurring to the roofs at The Village from a May 1, 2022, weather event.

Plaintiff's own public adjuster – Wesley Barber ("Mr. Barber") - admitted that if the alleged hail damage to the roofs at The Village was caused by a separate date of loss (other than May 1, 2022), Plaintiff would have had to make a separate claim. [Ex. 10 at 100:17 to 101:10]. However, because Plaintiff had a different insurer when they finally had an engineer inspect the roofs at The Village, it could not make a separate claim to Nationwide for any alleged subsequent damages. [Ex. 4 at 207:17-25; Ex. 7 at 42:1-6]. **Notably, Plaintiff can file a claim with the proper insurance carrier who had a policy with Plaintiff when their engineer found damage.**

Because Plaintiff has failed to show, through any admissible expert, engineer or any other reports, that its roofs were damaged by a May 1, 2022, weather event, it has failed to show that its roofs were damaged on the reported date of loss. Therefore, Plaintiff's claim for breach of contract should be dismissed.

## II. PLAINTIFF'S EVIDENCE OF ALLEGED BAD FAITH HAS SHOWN NOTHING MORE THAN AN HONEST DISAGREEMENT.

North Carolina law imposes on insurers the duty of carrying out insurance policies in good faith. *Alford v. Textile Ins. Co*, 103 S.E.2d 8, 12 (N.C. 1958); *see also Cash v. State Farm Mut. Auto. Ins. Co.*, 528 S.E.2d 372, 379 (N.C. App. 2000). A claim of bad faith requires satisfaction of three elements: (1) a refusal to pay after recognition of a valid claim; (2) bad faith; and (3) aggravating or outrageous conduct. *Lovell v. Nationwide Mut. Ins. Co.*, 108 N.C. App. 416, 420, 424 S.E.2d 181, 184 (N.C. App. 1993); *See also Ballard v. State Farm Fire and Casualty Co.*, 714 F. Supp. 3d 630, 644 (E.D.N.C. 2024).

### A. Nationwide Did Not Recognize a Valid Claim as to Hail Damage

The first element, refusal to pay after recognition of a valid claim, requires Plaintiff to show that Nationwide acted in a way that sufficiently indicated a desire to pay Plaintiff under a specific insurance policy. *See Lovell*, 108 N.C. App at 410, 424 S.E.2d at 184. To establish the first element, Plaintiff must also show the insurance company did more than just investigate because a mere investigation by an insurer does not support the inference that the insurer recognized a valid claim. *Lifebrite Hosp. Grp. of Stokes, LLC v. Travelers Prop. Cas. Co. of Am.*, 1:22-cv-849, 2023 WL 6201460, at *3 (M.D.N.C. Sept. 22, 2023) (citing *Labudde v. Phoenix Ins. Co.*, No. 7:21-CV-197-FL, 2022 WL 2651846, at *6 (E.D.N.C. July 8, 2022) and other cases). And, the plaintiff must establish "a subjective belief by defendant, through its agents, that plaintiff had a valid claim." *Labudde v. Phoenix Ins. Co.*, No. 7:21-CV-197-FL, 2022 WL 2651846, at *6 (E.D.N.C. July 8, 2022) Here, there is no evidence to establish that Nationwide ever subjectively believed that Plaintiff had a valid claim related to hail damage caused by a May 1, 2022, storm.

Instead, the record reflects that Nationwide investigated Plaintiff's claim and, following its investigation, subjectively believed that Plaintiff did not have a valid claim. Plaintiff made its

insurance claim with Nationwide on August 30, 2022. [Ex. 3]. Shortly after Plaintiff brought its claim, Nationwide contacted Hancock Claims Consultants ("Hancock") to perform an inspection of the building roofs at The Village. [Ex. 4 at 43:20 – 44:4; 103:22 – 104:9; Ex. 5 at pp. 31-32]. During Hancock's inspections of September 2, 8 and 13, Hancock inspected all eleven (11) roofs and identified no hail damage to any of the roofs. [Ex. 4 at 53:8 – 54:12; Ex. 5 at pp. 27-29]. Following that inspection, and Nationwide's review of all the photographs, measurements and other information it had for Plaintiff's claim, on September 19, 2022, Nationwide sent Plaintiff a letter stating that its investigation had revealed no covered damage to the roofs and denied coverage. [Ex. 4 at 53:8 – 54:12, 191:18 – 192:13; Ex. 6].

Plaintiff did not contact Nationwide again until late 2023, almost one year after Nationwide's September 2022 denial, at which time Nationwide agreed to have an engineer come out to do a reinspection of the property. [Ex. 1 at 67:17 – 69:1, 69:12 – 70:6, 88:11 – 89:11; Ex. 4 at 166:8 – 167:9; Ex. 7 at 35:7-11; Ex. 8 at 34:11-21]. Christopher Basile, MBA, P.E. ("Mr. Basile") of Rimkus Consulting Group, Inc. ("Rimkus") performed a reinspection of all eleven (11) roofs on October 30, 2023, and November 15, 2023, on behalf of Nationwide. [Ex. 16 at p. 7]. Following Mr. Basile's inspection, he drafted a report, indicating in large part that the roofs at The Village were not damaged by hail. [Ex. 16 at pp. 2-5]. Following its detailed review of the report, including review of photographs and other information it had available at the time, Nationwide issued another letter to Plaintiff on December 22, 2023, again denying coverage for the claim. [Ex. 4 at 76:18-21, 197:17 – 201:15; Ex. 17].

Finally, after another extended period of time in which Plaintiff did not communicate with Nationwide, on January 8, 2025, Plaintiff, through its agent, Mr. Barber, submitted a report drafted by Daniel W. Roberts, PE ("Mr. Roberts") of DWR Engineering Services, PLLC ("DWR Report").

[Ex. 4 at 166:8 – 167:9, 204:5-16; Ex. 10 at 92:11 – 93:3; Ex. 18; Ex. 19]. After Nationwide's review of the DWR Report, on February 24, 2025, Nationwide adjuster – Chris Cozart ("Mr. Cozart") – informed Mr. Barber that the review of the DWR report did not change Nationwide's coverage decision and that Nationwide was "still standing behind our denial that was sent out…" [Ex. 4 at 144:11-145:13, 171:3 – 174:8, 204:18 – 206:7; Ex. 21, Ex. 23].

As the evidence shows, Nationwide never recognized a valid claim for any hail damage to any of the roofs at The Village. Nationwide inspected the roofs on several occasions, reviewed and analyzed several reports and photographs from those investigations and made the reasonable determination that there was no covered hail damage to any of the roofs at The Village. For these reasons, Plaintiff has failed to demonstrate that Nationwide subjectively believed that Plaintiff had a valid claim and Plaintiff's claim for bad faith should be dismissed.

**B. The Denial of Plaintiff's Claim is no More Than an Honest Disagreement.**

The second element – acting in bad faith – requires more than a mere "honest disagreement" or innocent mistake. *Lovell*, 424 S.E.2d at 185; *see also Waterford I at Cary Park Condo. Homeowners Ass'n, Inc. v. Nationwide Prop. & Cas. Ins. Co.*, 669 F. Supp. 3d 531, 537 (E.D.N.C. 2023). The Fourth Circuit has held that an insurer's denial of a claim because of an honest disagreement entitles the insurer to a judgment as a matter of law. *See Topsail Reef Homeowners Ass'n v. Zurich Specialties London, Ltd.*, 11 Fed. Appx. 225, 239 (4th Cir. 2001) (quoting *Olive v. Great Am. Ins. Co.*, 333 S.E.2d 41, 46 (N.C. App. 1985)). "[B]ad faith means not based on honest disagreement or innocent mistake." *Bald Head Ltd., LLC v. Ironshore Specialty Ins. Co.*, 609 F. Supp. 3d 393, 400 (E.D.N.C. 2022) (quoting *Lovell*, 108 N.C. App. at 421, 424 S.E.2d at 185) (alteration in original). Courts applying North Carolina law have been consistent: the presence of an "honest disagreement" refutes the presence of bad faith. *See, e.g. Essentia Ins.*

*Co. v. Stephens*, 530 F. Supp. 3d 582, 603 (E.D.N.C. 2021) ("Bad faith does not arise when there is an 'honest disagreement.'"); *Topsail Reef Homeowners Ass'n*, 11 Fed. Appx. at 239 ("when an insurer denies a claim because of a legitimate, 'honest disagreement' . . . the plaintiff cannot establish bad faith"); *Bailey v. Certain Interested Underwriters at Lloyd's London*, 701 F. Supp. 3d 296, 306 (E.D.N.C. 2023) (quoting *Topsail Reef Homeowners Ass'n*). Honest disagreements that refute a claim of bad faith include disagreements over the scope of coverage or the value of an individual claim. *Bailey* 701 F. Supp. 3d at 306; *Essentia Insurance Co.*, 530 F. Supp. 3d at 603.

Here, the undisputed material facts, including the competing findings from inspections and competing engineer reports, clearly demonstrate a simple, honest disagreement as to the cause of damage to the roofs at The Village, not bad faith.

The facts demonstrate the Plaintiff's witness - Mr. Beam - believed there was hail damage to his roof at Building 7 due to a verbal report from Providence Roofing. [Ex. 1 at 38:24 – 39:7]. Once Plaintiff made its claim, Hancock performed an inspection of all eleven (11) roofs at The Village and, based on that inspection and review of photographs, Nationwide found no damage and denied Plaintiff's claim. [Ex. 4 at 52:23 – 54:12, 191:18 – 192:13; Ex. 5 at pp. 22-24, 27-29; Ex. 6]. One year after Nationwide's denial of the claim, All-American Roofing inspected the roofs at The Village and found what they believed was hail damage. [Ex. 9 at p. 1]. Mr. Beam testified that Tabor Roofing also found hail damage. [Ex. 1 at 56:25 – 57:8]. Based on Mr. Beam's reporting, Nationwide, once again, agreed to send an engineer to The Village to inspect the roofs. [Ex. 1 at 70:19 – 71:17; Ex. 4 at 50:1 – 51:10]. Mr. Basile found no damage caused by hail on the roofs at The Village. [Ex. 4 at 76:18-21, 197:17 – 201:15; Ex. 16 at pp. 2-5]. Following a detailed review of that report and all the other evidence it had at the time, Nationwide again denied

Plaintiff's claim stating there was no covered damage. [Ex. 4 at 76:18-21, 197:17 – 201:15; Ex. 17]. Finally, 2 ½ years after the alleged date of loss, Plaintiff submitted its own engineer report – the DWR Report. [Ex. 5 at p. 7-11; Ex. 18; Ex. 19]. Nationwide reviewed the DWR Report and maintained its denial of coverage. [Ex. 4 at 144:11-145:13, 171:3 – 174:8, 204:18 – 207:21; Ex. 21; Ex. 23].

Throughout the life of Plaintiff's claim there were competing opinions as to the existence and cause of damage to the roofs at The Village. Merely because Nationwide had a differing opinion, based on its numerous inspections and detailed review of the claim, Plaintiff argues that Nationwide committed bad faith. As explained above, this honest disagreement cannot amount to bad faith.

Despite that, based on Plaintiff's Complaint, it appears the only reason Plaintiff believes Nationwide's disagreement is in bad faith is because it believes that the Rimkus Report, and Nationwide's reliance on that report, were unreasonable. [D.E. 1-3 at ¶¶ 18-23; Ex. 10 at 81:11-25]. Under North Carolina law, Nationwide's reliance on an engineer's report in determining coverage generally protects it from bad faith liability, provided Nationwide conducted an adequate investigation and does not know or have reason to know the report is faulty. *See Harriman v. Associated Industries Insurance Company, Inc.*, 91 F.4th 724 (2024). "[I]t is not unreasonable to rely on others to undertake the needed investigation; and there is nothing to indicate, for example, that the investigators were incompetent or untrustworthy." *DENC, LLC v. Phila. Indem. Ins. Co.*, 426 F. Supp. 3d 151, 158 (M.D.N.C. 2019).

Rimkus holds itself out as a "worldwide provider of engineering and technical consulting to corporations, insurance companies law firms, and government agencies. Our experts specialize in forensic consulting, dispute resolution, construction management services, solution for the built

environment…" [Ex. 12]. Rimkus also represented to Nationwide that Mr. Basile would "perform his work in accordance with generally accepted professional practices and consistent with the professional skill and care ordinarily provided by professionals practicing in the same or similar locality under the same or similar circumstances" [Ex. 4 at 195:8 – 197:16; Ex. 14 at p. 2, Section (15.)] Furthermore, Ms. Basile is a Professional Engineer with over thirty (30) years of experience and has degrees in Civil/Structural Technology, Civil Engineering and Building Construction. [Ex. 16 at pp. 179-185]. Here, Nationwide had no reason to doubt that Mr. Basile was qualified to perform this inspection and, based on its own inspection of the Rimkus Report, found it to be reliable. [Ex. 4 at 76:18-21; 195:8 – 201:15; Ex. 14 at p.2, Section (15.)]. Here, it is clear that Nationwide reasonably relied on the Rimkus Report as evidence, combined with its review of all other available information, in support of its denial.

At most, Plaintiff, Mr. Barber and the DWR Report disagree with the findings of Hancock, Nationwide and the Rimkus Report. There is no evidence to suggest that Nationwide's investigation and review of the inspection reports by Hancock and Rimkus were done in bad faith. At most, there is an honest disagreement between Plaintiff and Nationwide and therefore, Plaintiff's claim for bad faith should be dismissed.

**C. Nationwide Did Not Engage in Any Aggravating or Outrageous Conduct.**

The third element, "aggravated conduct," includes "fraud, malice, gross negligence, insult . . . [or other conduct which] evinces a reckless and wanton disregard of the plaintiff's rights." *Dailey v. Integon Gen. 1ns. Corp.*, 331 S.E. 2d 148, 154 (N.C. App. 1985). "When an insurer denies a claim that is reasonably in dispute and based on a legitimate disagreement, the plaintiff cannot establish bad faith or aggravating conduct." *Universal Underwriters Ins. Co. v. Lallier*, 334 F. Supp. 3d 723, 736 (E.D.N.C. 2018).

There is no evidence that Nationwide engaged in any aggravated or outrageous conduct. As explained above, Nationwide properly conducted an inspection within days after the claim was made. When Plaintiff reiterated its belief that the roof was damaged by hail, Nationwide retained an engineer to perform another inspection of the building roofs, then reasonably reviewed and relied on that engineer's findings, combined with all of the other evidence. There is nothing outrageous about that conduct simply because Plaintiff disagrees.

In support of its claim for aggravated conduct, Plaintiff alleges that Nationwide's inspector – Hancock – "only ascended to two possibly three, roofs at the Property…" [D.E. 1-3 at ⁋ 14]. This has been proven to be untrue. Hancock clearly got on all eleven (11) roofs and took photos and informed Nationwide of its findings. [Ex. 5 at pp. 22-24, 27-29]. Plaintiff has not produced any evidence that Hancock failed to inspect all eleven (11) roofs.

Plaintiff goes on to allege that it continued "to have problems with establishing communication with Defendant…" and that "[a]fter subjecting Plaintiff to misdirection and stonewalling tactics for over a year, Defendant retained Rimkus Consulting Group, Inc…" [D.E. 1-3 at ⁋⁋ 16-17]. Plaintiff also alleges that from December 22, 2023, until January 8, 2025 "Defendant's continuous denials endured for yet another year, eventually forcing Plaintiff to retain their own engineer to inspect the property…" [D.E. 1-3 at ⁋ 24]. Again, these allegations are not true. Plaintiff has admitted that it and its representatives never attempted to establish any communication with Nationwide following Nationwide's denial of September 19, 2022, until October of 2023, nor did they attempt to contact Nationwide from December 22, 2023, until January 8, 2025. [Ex. 1 at 88:11 – 89:11; Ex. 4 at 166:8 - 167:9, 204:5-16; Ex. 5 at pp. 7-11; Ex. 7 at 35:7-11; Ex. 8 at 34:11-21; Ex. 10 at 79:18 – 80:6]. Plaintiff has failed to produce any evidence that Nationwide did not communicate with it in a timely manner.

Plaintiff next alleges that Nationwide unreasonably relied on the Rimkus Report when making its coverage determination. [D.E. 1-3 at ¶¶ 18-23]. As previously discussed, Nationwide had absolutely no reason to doubt the reasonableness or validity of the Rimkus Report, nor of Mr. Basile's inspection based on its own review of the report and its accompanying photographs. [*See* Sec. II(B) at pp 11-12 of Nationwide's Brief; Ex. 4 at 76:18-21; 195:8 – 201:15; Ex. 12; Ex. 14 at p. 2, Section (15.)]. Plaintiff goes on to attempt to allege that because its own expert disagreed with the Rimkus Report, this somehow establishes bad faith. [D.E. 1-3 at ¶¶ 25-27]. Again, as previously discussed, the fact that there are two (2) competing engineer reports merely creates an honest disagreement, and these allegations cannot establish bad faith or aggravating conduct. [Sec. II(B) at pp. 10-11 of Nationwide's Brief].

Finally, Plaintiff alleges that following DWR's inspection of the roofs, Mr. Barber attempted to contact Mr. Cozart on January 8, 2025 and "[b]efore Mr. Barber was even able to send Mr. Cozart the report, Mr. Cozart responded stating, 'No, we are not doing this,' reiterating that Nationwide would 'stick with its position no matter what was presented'…" [D.E. 1-3 at ¶¶ 28-29]. Plaintiff, although offering no evidence that this conversation happened, beyond the recollection of Mr. Barber, who testified that he did not know the identity of the adjuster he was speaking to, claims that this proves that Nationwide did not consider the DWR Report. [Ex. 10 at 53:14-19, 93:4 - 94:5]. Mr. Barber also stated that he believed Mr. Cozart and Nationwide did not review the DWR Report because he failed to provide a different denial letter after the production of the report. [Ex. 10 at 98:17 – 99:22]. In fact, Nationwide considered the DWR Report in detail and found that the inspection occurred approximately two and a half years after the alleged date of loss, the inspection was only of six (6) of the eleven (11) roofs and the inspector had mistakenly identified blisters as hail damage. [Ex. 4 at 144:11-145:13, 171:3 – 174:8, 204:18 – 207:21]. Based

on its review of the DWR Report, Nationwide reasonably concluded that it did not affect its coverage determination and informed Mr. Barber of the same on February 24, 2025, and March 7, 2025. [Ex. 4 at 144:11-145:13, 171:3 – 174:8, 204:18 – 207:21; Ex. 21; Ex. 23].

The facts do not show that Nationwide engaged in any aggravating or outrageous conduct. The facts also reveal that, despite Plaintiff's unfounded allegations in its Complaint, there is no evidence that Nationwide committed any "fraud, malice, gross negligence, insult . . . [or other conduct which] evinces a reckless and wanton disregard of the plaintiff's rights." *Dailey v. Integon Gen. 1ns. Corp.*, 331 S.E. 2d 148, 154 (N.C. App. 1985). Thus, Plaintiff's bad faith claim fails as a matter of law.

## III. PLAINTIFF FAILED TO PROVIDE OR FORECAST ANY EVIDENCE SHOWING UNFAIR OR DECEPTIVE TRADE PRACTICES

A violation of the Unfair and Deceptive Trade Practices Act ("UDTPA") requires plaintiffs to show (1) an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) which proximately caused injury to plaintiffs. *Gray v. N.C. Ins. Underwriting Ass'n*, 529 S.E.2d 676, 681 (N.C. 2000). Whether an act is unfair or deceptive is a question of law that can be adjudicated at the summary judgment stage. *Id.* at 681.

An unfair practice is one that offends established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers. *Marshall v. Miller*, 276 S.E.2d 397, 403 (N.C. 1981). Meanwhile, a deceptive practice is one that has a capacity or tendency to deceive. *Id.* at 397. A "plaintiff must show that the acts complained of possessed the tendency or capacity to mislead, or created the likelihood of deception." *Gress v. Rowboat Co.*, 190 N.C. App. 773, 776, 661 S.E.2d 278, 281 (2008); *see Overstreet v. Brookland, Inc.*, 52 N.C. App. 444, 452–53, 279 S.E.2d 1, 7 (1981); *Universal Underwriters*, 334 F. Supp. 3d at 737 (Conduct that violates

N.C. Gen. Stat. § 58-63-15(11) is an unfair and deceptive act or practice under the UDTPA because "such conduct is inherently unfair, unscrupulous, immoral, and injurious to consumers").

The Eastern District of North Carolina has previously ruled that a mere breach of contract is not an act that qualifies as unfair or deceptive under UDTPA. *Barbour v. Fidelity Life Ass'n*, 361 F. Supp. 3d 565, 573 (E.D.N.C. 2019). Only when substantial aggravating circumstances exist outside the breach of contract can a plaintiff raise a UDTPA claim. *Waterford I at Cary Park Condo. Homeowners Ass'n*, 669 F. Supp. 3d at 536. No such aggravating circumstances exist here.

In its Complaint, Plaintiff lists, nearly verbatim, eight (8) subsections of N.C. Gen. Stat. § 58-63-15(11): (a), (b), (c), (d), (f), (g), (h), and (n), and asserts that Nationwide violated each. [D.E. 1-3 ¶ 41]. The record does not support these statutory references. The few factual assertions that are included relate only to Nationwide's coverage determination i.e., the same conduct underlying the breach of contract claim. Such allegations do not transform a contractual dispute into a UDTPA claim. Because the Complaint pleads no facts showing conduct separate and distinct from the alleged breach, Plaintiff's UDTPA claim should be dismissed.

### A. Plaintiff's Claim Under N.C. Gen. Stat. § 58-63-15(11)(b): Failure to Acknowledge and Act Reasonably Promptly Upon Communications, Fails as a Matter of Law

N.C.G.S. § 58-63-15(11)(b) prohibits an insurer from failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies." It does not impose a specific deadline for responding to communications. *Id*. The relevant inquiry is whether the insurer's conduct was unreasonable under the circumstances. *Federated Mut. Ins. Co. v. Williams Trull Co.*, 838 F. Supp. 2d 370, 423 (M.D.N.C. 2011). Even a 54-day delay has been found insufficient, standing alone, to establish an unfair settlement practice. *Labudde v. Phx. Ins. Co.*, No. 7:21-CV-197-FL, 2022 U.S. Dist. LEXIS 120315, at *22 (E.D.N.C. July 8, 2022).

Here, the evidence demonstrates that there is absolutely no time at which Nationwide failed to acknowledge or act reasonable or promptly for this claim. In fact, there is absolutely no evidence that Nationwide even delayed in responding to Plaintiff or any of its representatives. [Ex. 1 at 88:11 – 89:11; Ex.4 at 166:8 – 167:9, 204:5-16; Ex. 5 at pp. 7-11; Ex. 7 at 35:7-11; Ex. 8 at 34:11-21; Ex. 10 at 79:18 – 80:6]. Courts routinely dismiss claims premised on § 58-63-15(11)(b) where a plaintiff fails to allege facts supporting a plausible inference of unreasonable delay. *Neshat v. Nationwide Mut. Fire Ins. Co.*, No. 5:20-CV-664-D, 2021 WL 2168906, at *4 (E.D.N.C. May 27, 2021).

Because there is no evidence supporting that Nationwide failed to acknowledge or act reasonably promptly upon communications for this claim, Plaintiff's claim under § 58-63-15(11)(b) fails as a matter of law.

### B. Plaintiff's Claim Under N.C. Gen. Stat. § 58-63-15(11)(c) and (d): Investigation of Claims Violations Fails as a Matter of Law

N.C. Gen. Stat. § 58-63-15(11)(c) and (d) address an insurer's investigative obligations; specifically, the duty to adopt and implement reasonable standards for the prompt investigation of claims and the duty to conduct a reasonable investigation before denying a claim.

Plaintiff alleges that Nationwide violated these subsections by failing to adopt reasonable investigative standards and by failing to conduct a reasonable investigation. [D.E. 1-3 at ¶¶ 41(c) and (d)]. Plaintiff has introduced absolutely no evidence that Nationwide failed to adopt and implement reasonable standards of the prompt investigation of claims. In fact, Nationwide testified at length regarding the guidelines it uses to guide its claims adjusters regarding best claims practices. [Ex. 4 at 21:18 – 22:25]. Because there is no evidence supporting this claim, it must be dismissed.

Plaintiff also alleges that Nationwide "refus[ed] to pay claims without conducting a reasonable investigation based upon all available information." [D.E. 1-3 at ⁋ 41(d)]. Here, Plaintiff attempts to paint a picture of investigative misconduct based solely on its disagreement with the coverage decision. But the mere fact that Plaintiff disputes the outcome of the claim does not permit a plausible inference that Nationwide failed to conduct a reasonable investigation. The evidence shows that Plaintiff believed it had hail damage to the roofs at The Village. [Ex. 1 at 38:24 – 39:7]. Plaintiff eventually made its insurance claim to Nationwide and within weeks of Plaintiff making its claim, Nationwide had fully inspected all eleven (11) roofs. [Ex. 3; Ex. 4 at 52:23 – 54:12, 191:18 – 192:13; Ex. 5 at pp. 22-24, 27-29]. Based on that inspection and its review of all of the documents including photographs it had at the time, Nationwide denied coverage. [Ex. 4 at 52:23 – 54:12, 191:18 – 192:13; Ex. 6]. After over a year of no communication from Plaintiff, Plaintiff finally reached back out to Nationwide, disputing the coverage decision. [Ex. 1 at 70:19 – 71:17]. In response, Nationwide retained an engineer to reinspect all eleven (11) roofs of The Village. [Ex. 1 at 70:19 – 71:17; Ex. 4 at 50:1 – 51:10]. Based on that inspection and Nationwide's detailed review of that inspection, Nationwide again denied coverage. [Ex. 4 at 76:18-21, 197:17 – 201:15; Ex. 16 at pp. 2-5; Ex. 17]. Plaintiff then went another year without attempting to communicate with Nationwide and then on January 8, 2025, Plaintiff contacted Nationwide stating they had had their own engineer inspect the roofs and he had found damage. [Ex. 4 at 166:8 – 167:9, 204:5-16; Ex. 10 at 92:11 – 93:3; Ex. 18; Ex. 19]. After reviewing Plaintiff's report, Nationwide determined that the report did not change its coverage decision and maintained its denial. [Ex. 4 at 144:11-145:13, 171:3 – 174:8, 204:18 – 206:7; Ex. 21, Ex. 23]. There is absolutely nothing in that set of facts that proves that Nationwide failed to conduct a reasonable investigation.

Plaintiff challenges the result of the claim decision, not the adequacy of the process. *Id*. Because N.C. Gen. Stat. § 58-63-15(11)(c) and (d) target unreasonable investigative practices, rather than mere disagreements over coverage determinations, the allegations under this subsection fail as a matter of law. *See e.g. Barbour v. Fid. Life Ass'n*, 361 F. Supp. 3d 565, 576 (E.D.N.C. 2019). These claims should therefore be dismissed.

**C. Plaintiff Fails to Show that Nationwide Failed to Settle Claims Promptly, Fairly, and in Good Faith**

Plaintiff next alleges violations of N.C.G.S. § 58-63-15(11)(f), (g), and (h) all arising from the settlement of claims. Specifically, Plaintiff alleges that Defendant failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement after liability had become reasonably clear based on the evidence provided by Plaintiff to Defendant, offered settlement amounts allegedly below what Plaintiff believed was owed under the Policy thereby compelling Plaintiff to initiate litigation to recover purportedly due benefits, and failed to settle claims where liability had become reasonably clear under one portion of the insurance policy in order to influence settlements under other portions. [D.E. 1-3 at ¶ 41(e),(f), (g), (i)]. "Subparagraphs (f), (g), (h)… all govern an insurer's conduct once liability under the governing policy is either reasonably clear or not disputed. Plaintiff's claims under these subparagraphs accordingly fail where it has not introduced evidence showing that liability is reasonably clear." *Bear Invs., LLC v. Penn Nat'l Mut. Cas. Ins. Co.*, No. 5:19-CV-529-FL, 2024 WL 4279493, at *14 (E.D.N.C. Sept. 24, 2024).* That is precisely the situation here.

Plaintiff has offered absolutely no evidence that liability had become reasonably clear as the facts demonstrate that Nationwide's exhaustive investigation revealed that the roofs at The Village were not damaged as a result of hail that occurred on May 1, 2022.

**i. Plaintiff's Claim that Nationwide Did Not Attempt in Good Faith to Effectuate Prompt, Fair and Equitable Settlements of Claims in Which Liability has Become Reasonably Clear Based on the Evidence Fails as a Matter of Law**

As an initial matter, Plaintiff fails to show that Nationwide did not attempt "in good faith to effectuate prompt, fair and equitable settlement…in which liability had become reasonably clear based on the evidence…" of Plaintiff's claim. [D.E. 1-3 at ⁋ 41(e) and (i)]. Bad faith requires a showing of "aggravating or outrageous conduct.'" *Topsail Reef*, 11 F. App'x at 237 (citation omitted). As the Fourth Circuit has explained, "[a]ggravated conduct is defined to include 'fraud, malice, gross negligence, insult … willfully, or under circumstances of rudeness or oppression, or in a manner which evinces a reckless and wanton disregard of the plaintiff's rights.'" *Id*. at 239. "Generally, such aggravating circumstances include some element of deception, such as forged documents, lies, or fraudulent inducements." *Bailey*, 701 F. Supp.3d at 308, aff'd, No. 23-1642, 2024 WL 2795187 (4th Cir. May 31, 2024). Notably, "a potentially incomplete investigation is [not] evidence … of aggravating or outrageous conduct*."* *Lifebrite*, 2023 WL 6201460, at *4. Accordingly, "[w]hen an insurer denies a claim that is reasonably in dispute and based on a legitimate disagreement, the plaintiff cannot establish bad faith or aggravating conduct." *Universal Underwriters*, 334 F. Supp.3d at 736.

Here, as previously explained, Plaintiff has failed to show any aggravating or outrageous conduct. [*See* Sec. II(C) at pp. 12-15]. Instead, the record reflects nothing more than Plaintiff's disagreement with the outcome of Nationwide's investigation, which is insufficient to establish aggravated conduct. *See Lifebrite*, 2023 WL 6201460, at *4. "[W]here an insurer has reasonable bases to challenge the validity of the insured's claims, subparagraph (f) is not applicable." *Essentia Ins. Co.*, 530 F. Supp. 3d at 608 (citations, quotation marks and modification omitted); *Jones v. Harrelson & Smith Contractors*, LLC, 194 N.C. App. 203, 230, 670 S.E.2d 242 (2008) (Tyson, J.,

concurring) ("North Carolina courts are extremely hesitant to allow plaintiffs to attempt to manufacture a tort action and allege [an UDTPA claim] out of facts that are properly alleged as a breach of contract claim."), aff'd, 363 N.C. 371, 677 S.E.2d 453 (2009) (per curiam).

Finally, Plaintiff has not – and cannot – show that liability was reasonably clear, as confirmed by the September 19, 2022, and December 22, 2023, coverage denial letters which were based off of Nationwide's extensive investigation of the claim. [Ex. 4 at 53:8 – 54:12, 76:18-21, 144:11-145:13, 171:3 – 174:8, 191:18 – 192:13, 197:17 – 201:15, 204:18 – 206:7; Ex. 7; Ex. 17]. Nationwide's investigation revealed that the roofs had not sustained any hail damage and therefore the claim was denied. [Ex. 4 at 53:8 – 54:12, 76:18-21, 144:11-145:13, 171:3 – 174:8, 191:18 – 192:13, 197:17 – 201:15, 204:18 – 206:7; Ex. 6; Ex. 16; Ex. 17]. Where liability is disputed and has never been recognized as reasonably clear, § 58-63-15(11)(f) is not implicated. For all of these reasons, Plaintiff's claim under N.C.G.S. § 58-63-15(11)(f) fails as a matter of law.

**ii. Plaintiff's Claim Under N.C.G.S. § 58-63-15(11)(g): Compelling [the] Insured to Institute Litigation to Recover Amounts Due Under an Insurance Policy by Offering Substantially Less than the Amounts Ultimately Recovered in Actions Brought by such Insured Fails as a Matter of Law**

Plaintiff's claim under N.C. Gen. Stat. § 58-63-15(11)(g), which prohibits compelling an insured to institute litigation to recover amounts due under an insurance policy, fails as a matter of law. As the Fourth Circuit explained in *Elliott v. Am. States Ins. Co.*, subsection (g) requires that amounts be "due," and "until liability has been determined," an insurer's failure to make a settlement offer does not constitute an unfair settlement practice. 883 F.3d 384, 396 n.7 (4th Cir. 2018). Consistent with this principle, while the Court recognizes that insurers have a duty to consider settlement in good faith, they do not have a duty to settle every claim. *See Blis Day Spa, LLC v. Hartford Ins. Grp.*, 427 F. Supp. 2d 621, 635–36 (W.D.N.C. 2006)). Nor does subsection (g) impose strict liability on an insurer for denying a claim that is later found to be covered. *Cent.*

*Carolina Bank & Tr. Co. v. Sec. Life of Denver Ins. Co.*, 247 F. Supp. 2d 791, 801–02 (M.D.N.C. 2003). As with other Chapter 75 claims predicated on an alleged breach of contract, a plaintiff must allege some form of aggravated or egregious conduct beyond a mere coverage dispute. *Id.*; see also *Prosperity Vill. Townhome Ass'n, Inc. v. State Farm Fire & Cas. Co.*, No. 3:13-cv-00363, 2014 WL 4311498, at *6 (W.D.N.C. Aug. 29, 2014) (requiring evidence that the insurer believed the disputed portion of the claim was valid but refused payment to force a discounted settlement).

Here, Plaintiff fails to show that Nationwide ever acknowledged validity of its claim, let alone found that liability was clear. To the contrary, the undisputed facts demonstrate that liability was expressly disputed. [Ex. 4 at 53:8 – 54:12, 76:18-21, 144:11-145:13, 171:3 – 174:8, 191:18 – 192:13, 197:17 – 201:15, 204:18 – 206:7; Ex. 6; Ex. 16; Ex. 17; Ex. 19]. Moreover, as discussed above, Plaintiff has failed to allege any aggravating circumstances suggesting bad faith or improper settlement conduct. Accordingly, Plaintiff has failed to prove a claim under N.C. Gen. Stat. § 58-63-15(11)(g), and this claim should be dismissed.

**iii. Plaintiff's Claim for a Violation of N.C.G.S. § 58-63-15(11)(h): Attempting to Settle a Claim for Less than the Amount to Which a Reasonable Man Would Have Believed He Was Entitled Fails as a Matter of Law**

N.C.G.S. § 58-63-15(11)(h) prohibits insurers from "attempting to settle claims for less than the amount to which a reasonable man would have believed he was entitled." N.C. Gen. Stat. § 58-63-15(11)(h). Courts have made clear that subsection (h) governs an insurer's conduct only after liability under the policy is reasonably clear or undisputed. *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, No. 2:14-CV-08-FL, 2022 WL 4709249, at *17 (E.D.N.C. Sept. 30, 2022).

As established above, Plaintiff is unable to show that liability was conclusively determined or reasonably clear. Where liability has not been resolved, "it cannot be said that a reasonable person would believe himself entitled to either the maximum coverage provided under the policy,

or the amount ultimately recovered, before the fact or amount of liability had been determined." *Id.* at *18 (citing *Elliott v. Am. States Ins. Co.*, 883 F.3d 384, 398–99 (4th Cir. 2018)). As the Fourth Circuit explained in *Elliott*, "[t]he mere fact of having coverage does not entitle the insured to recover at all." 883 F.3d at 399.

Even assuming, arguendo, that Plaintiff had proven that liability was reasonably clear, its claim under subsection (h) would still fail because there are no facts suggesting that Nationwide's coverage position was unreasonable. To the contrary, as shown above, the evidence is clear that Nationwide investigated Plaintiff's claim and after evaluating the claim, determined there were no covered damages as a result of hail. [Ex. 4 at 53:8 – 54:12, 76:18-21, 144:11-145:13, 171:3 – 174:8, 191:18 – 192:13, 197:17 – 201:15, 204:18 – 206:7; Ex. 6; Ex. 16; Ex. 17]. The record is devoid of any facts beyond Plaintiff's disagreement with Nationwide's coverage decision. Because Plaintiff has failed to show that liability was reasonably clear or that Nationwide's coverage position was unreasonable, it fails to state a plausible claim under N.C. Gen. Stat. § 58-63-15(11)(h). *See Lifebrite*, 2023 WL 6201460, at *4; *see also Universal Underwriters*, 334 F. Supp.3d at 736. This claim should therefore be dismissed.

### D. Plaintiff Fails to Show That Nationwide Failed to Provide Adequate Explanations of Its Coverage Determination

N.C.G.S. § 58-63-15(11)(n) requires insurers to "promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts . . . for denial of a claim or for the offer of a compromise settlement." N.C. Gen. Stat. § 58-63-15(11)(n). The focus of this subsection is not whether the denial itself was correct, but whether the insurer provided a *reasonable explanation* connecting the policy provisions to the facts of the claim. An insurer may not "hide the ball" or require the insured to "connect the dots" by merely reciting policy language

and facts without bridging the gap between the two. *Martin v. Nautilus Ins. Co.*, 629 F. Supp. 3d 333, 341 (M.D.N.C. 2022).

At the same time, North Carolina courts routinely find subsection (n) satisfied where a denial letter identifies a specific basis for the insurer's decision. *See, e.g.*, *Murphy-Brown, LLC v. ACE Am. Ins. Co.*, No. 19 CVS 2793, 2019 WL 6878942, at *8–9 (N.C. Super. Ct. Dec. 16, 2019) (pollution exclusions); *Lockhart v. State Farm Fire & Cas. Co.*, No. 1:17-cv-994, 2018 WL 3339531, at *3 (M.D.N.C. July 6, 2018) (lack of cooperation). By contrast, subsection (n) is implicated where an insurer fails to identify *any* basis for denial. *See Miller v. Nationwide Mut. Ins. Co.*, 112 N.C. App. 295, 435 S.E.2d 537, 543–44 (1993).

Here, Nationwide submitted two (2) denial letters and three (3) denial decisions to Plaintiff. First, on September 19, 2022, after it had investigated Plaintiff's loss in a timely manner, Nationwide submitted a letter to The Village explaining its coverage decision stating:

> Upon careful review of the facts of the loss and policy provisions, we regret we must inform you there is no coverage for the loss.
>
> Our inspection of all locations listed above revealed no signs of direct physical damage to the roof caused by wind, hail or any other covered causes of loss. Therefore, as there is no direct physical damage to the roofs we found, we are unable to make any payment.

[Ex. 4 at 53:8 – 54:12, 191:18 – 192:13; Ex. 6 at p.1]. This letter goes on to cite to the Policy language which supports Nationwide's coverage decision. [Ex. 6 at p. 1].

After approximately one (1) year of no communication with Nationwide, Plaintiff raised issues with Nationwide's coverage decision and Nationwide hired an engineer to go back out to reinspect the property. [Ex. 1 at 88:11 – 89:11; Ex. 4 at 166:8 – 167:9; Ex. 7 at 35:7-11; Ex. 8 at 34:11-21; *see also generally* Ex. 16]. Following the engineer's inspection and Nationwide's detailed review of all of the available information at the time, Nationwide submitted another letter to Plaintiff on December 22, 2023, stating:

> Based on our investigation and review of your policy contract, Nationwide Mutual Insurance Company's opinion is this loss was caused by loss of granules, blistering, flaking, mechanical damage, exposure to bird dropping, organic growth, lichen, manufacturing deficiencies, and the natural aging of the shingles. We must respectfully advise you that your policy number ACP BPHM2286215435 does not provide coverage for this loss.

[Ex. 4 at 76:18-21, 197:17 – 201:15; Ex. 17 at p. 1]. This letter again goes on to cite to the Policy language explaining that any observed damage to the roof was not the result of a covered loss. [Ex. 17].

Finally, after yet another year, Plaintiff, through its public adjuster, informed Nationwide that it had its own engineer perform an inspection in October of 2024. [Ex. 4 at 166:8 – 167:9; Ex. 10 at 92:11 – 93:3; Ex. 18; Ex. 19]. Mr. Cozart stated that because its inspections of September 2022 and October 2023 had revealed no damage, Nationwide would be sticking to its coverage decision at this time and any damage observed on October 2024 would have to be submitted through another claim. [Ex. 4 at 164:7 – 167:9; Ex. 5 at p. 7]. Mr. Barber informed Nationwide that Plaintiff had a different insurer and that it would still like to submit the report for Nationwide's review. [Ex. 4 at 164:7 – 167:9; Ex. 5 at p. 7; Ex. 18]. Mr. Cozart and Nationwide agreed that it would review the DWR Report and did in fact review it. [Ex. 4 at 144:11-145:13, 164:7 – 167:9, 171:3 – 174:8, 204:18 – 206:7; Ex. 8 at p. 7]. After a thorough review of the DWR Report, which cited to an inspection that occurred two and a half years after the date of loss that only showed an inspection of six (6) out of eleven (11) roofs, Nationwide informed Mr. Barber and by extension, Plaintiff, that Nationwide's coverage decision had not changed and resubmitted its denial letter dated December 22, 2023. [Ex. 4 at 144:11-145:13, 164:7 – 167:9, 171:3 – 174:8, 204:18 – 206:7; *see also generally* Ex. 19; Ex. 21, Ex. 23].

At no point over the course of this three-year investigation did Nationwide fail to consider all of the facts it had available to it, nor did it fail to compare those facts to the Policy. As such,

Plaintiff has failed to show a violation of N.C. Gen. Stat. § 58-63-15(11)(n) and this claim should be dismissed.

Even if there were evidence to support that Nationwide engaged in any unfair or deceptive trade practice, which there is not, Plaintiff is unable to show that such act or practice proximately caused actual injury to him. Plaintiff needs to produce evidence showing separate and distinct damages caused by the alleged unfair and deceptive trade practices, which it has not, and cannot, do.

For these reasons, Plaintiff's claim for unfair and deceptive trade practices fails as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that its Motion for Summary Judgment be granted.

This, the 16th day of March 2026.

/s/ *Andrew K. Sonricker*
Andrew K. Sonricker (N.C. Bar No. 55224)
Rachel E. Keen (N.C. Bar No. 27777)
Womble Bond Dickinson (US) LLP
555 Fayetteville St., Suite, 1100
Raleigh, North Carolina 27601
Telephone: (919) 755-2100
Facsimile: (919) 755-2150
Email: andrew.sonricker@wbd-us.com
Rachel.keen@wbd-us.com

*Attorneys for Defendant*

**CERTIFICATE OF COMPLIANCE WITH PAGE LIMIT**

Pursuant to Local Rule 7.1(d), I hereby certify that the foregoing memorandum complies with the Court's page limit requirements and that it does not exceed 25 pages in length, excluding the case caption, signatures, and certificates.


/s/ *Andrew K. Sonricker*
Andrew K. Sonricker (N.C. Bar No. 55224)
Womble Bond Dickinson (US) LLP
555 Fayetteville St., Suite, 1100
Raleigh, North Carolina 27601
Telephone: (919) 755-2100
Facsimile: (919) 755-2150
Email: andrew.sonricker@wbd-us.com

*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 16, 2026, the undersigned attorney filed the foregoing document with the Clerk of Court via the CM/ECF system that will cause a service copy to be served upon the parties in this action.

/s/ *Andrew K. Sonricker*
Andrew K. Sonricker (N.C. Bar No. 55224)
Womble Bond Dickinson (US) LLP
555 Fayetteville St., Suite, 1100
Raleigh, North Carolina 27601
Telephone: (919) 755-2100
Facsimile: (919) 755-2150
Email: andrew.sonricker@wbd-us.com

*Attorney for Defendant*